JUDICIAL WATCH, INC., Plaintiff,

v.

UNITED STATES DEPARTMENT OF COMMERCE, Defendant.

No. CIV. A. 95–133(RCL).

United States District Court, District of Columbia.

Aug. 21, 2000.

Larry Elliot Klayman, Klayman and Assocs., PC, Washington DC, for Plaintiff.

Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on Non-party Democratic National Committee's ("DNC") Motion to Reconsideration of the Court's April 27, 2000 Order. Upon consideration of the DNC's motion, the opposition thereto, the applicable law, and for the reasons set forth below, the court DENIES DNC's motion for reconsideration.

## I. BACKGROUND

This court has already chronicled the factual and procedural history underlying this particular Freedom of Information Act ("FOIA") case. *See Judicial Watch, Inc. v. United States Dep't of Commerce*, Civ. No. 95–133 (1999), Memorandum and Order, December 22, 1999; *see also Judicial Watch v. United States Dep't of Commerce*, 34 F.Supp.2d 28, 29–41 (D.D.C. 1998) (providing detailed history of litigation). Nonetheless, in light of the especially cumbersome posture of the present mo-

tion for reconsideration, the court finds it necessary to reiterate the procedural history.

In September 1998, plaintiff Judicial Watch served Non-party Democratic National Committee ("DNC") with a subpoena requiring the production of

[a]ny and all documents and things, from January 20,1993 to the present, which refer or relate in any way to the U.S. Department of Commerce (Commerce) and/or its secretarial trade missions, including but not limited to: (a) lists provided to and from Commerce, its employees and agents; (b) names of persons and/or companies who are DNC donors; and (c) the chronology and other files of or documents and things concerning Rick Boylan, Alice Travis, Eric Selden, Terry McAuliffe and Marvin Rosen.

By subsequent order, the court substantially refined the scope of plaintiff's subpoena to cover the following documents:

1. Any lists of one name or more provided by the DNC to the U.S. Department of Commerce or provided by the Department of Commerce to the DNC, in connection with the selection of participants for any Department of Commerce secretarial trade missions conducted between January 20, 1993 and January 31, 1995, and

2. Any documents referencing the DNC's delivery of any such lists to the Department of Commerce, or the Department of Commerce's delivery of any such lists to the DNC.

*Judicial Watch*, Civ. No. 95–133, Order of October 14, 1998. In addition, the court's

order provided that the revised subpoena would only be directed at the files of those individuals named in the original subpoena, and that after the DNC completed this production, the court would consider whether further document searches or a deposition of the DNC's custodian of records were warranted. *Id.*

The DNC search pursuant to the revised subpoena yielded only two responsive documents, both of which Judicial Watch indicates that it had already obtained from a confidential source.[1] Judicial Watch then requested that the Magistrate restore the scope of the subpoena to its initial scope and order DNC to conduct a broader search. The Magistrate denied plaintiff's request, finding that the likelihood that a further search would produce admissible evidence was outweighed by the burden and expense of requiring the DNC to conduct further searches.

Consequently, Judicial Watch appealed to this court the Magistrate's denial of its motion to expand the DNC subpoena, asserting that documents obtained from a confidential source suggested that other DNC files may contain responsive documents, and therefore, a broader search may be warranted.[2] Because the Magistrate could not have considered these additional documents before denying plaintiff's motion to expand the search, this court remanded the matter to the Magistrate for reconsideration in light of these documents. In so ruling, this court specifically directed the Magistrate to consider why these additional documents were not uncovered in the revised search, whose files at the DNC they came from and whether additional searches of DNC files would be appropriate. *Judicial Watch*, Civ. No. 95–

---

**1.** The first document produced is a one-page, July 25, 1994, document from Terry McAuliffe to the Department of Commerce Office of Business Liaison Director Melissa Moss, which was drafted in both letter and memorandum formats. The second document is a two-page January 13, 1994, memorandum from Eric Sildon, which references a request by the Department of Commerce to the DNC for names of candidates for a Russian trade mission.

**2.** These documents included two DNC memoranda to Tracey Rancifer in the Office of Business Liaison at the Commerce Department, which is the office within Commerce that nominated participants for trade missions and a donor list of some sort.

133 (1999), Memorandum and Order, December 22, 1999. The court further noted that DNC had provided no evidence to support the conclusion that plaintiff had obtained these documents through improper means. *Id.* at 3 n. 2.

Shortly after this court remanded the matter to the Magistrate, on January 5, 2000, counsel for the DNC submitted to the Magistrate's chambers a letter and declaration that suggested that the documents proffered by plaintiff in support of its request for a broader search[3] may have been obtained in contravention of Congressional confidentiality protocols, as the documents bore markings consistent with documents produced pursuant to Congressional committee subpoenas. Plaintiff moved to strike the DNC filing, contending that it was submitted in violation of Local Civil Rule 5.1(b). The Magistrate granted plaintiff's motion to strike, but granted DNC leave to refile the information in accordance with the Local Rules. *Judicial Watch,* Civ. No. 95–133, Order of January 7, 2000. The DNC subsequently refiled the declaration as a Notice of Filing on January 13, 2000. *Judicial Watch,* Civ. No. 95–133 (2000), Non–Party Democratic National Committee's Notice of Filing, Declaration of Joseph M. Birkenstock, January 13, 2000.

One week later, without allowing plaintiff the opportunity to respond to the sub-stance of the matters raised in the DNC declaration, the Magistrate determined, *sua sponte,*[4] that he had "an independent obligation to ascertain whether documents filed with this Court and upon which a party relies for a particular assertion were improperly obtained." *Judicial Watch,* Civ. No. 95–133, Memorandum Order, January 21, 2000. To that end, the Magistrate ordered plaintiff to

file within 10 days of this order an affidavit by the person most familiar with the topic attesting to the access it had to the documents produced by DNC in accordance with the subpoenas issued by Congressional committees and whether such access included the right to copy or have copies made of the documents to which it had access.

Memorandum Order, January 21, 2000. The order also advised plaintiff to file an affidavit explaining "why, in light of the access it already had, expanding the scope of the DNC subpoena ... is appropriate." *Id.* Plaintiff again moved to strike DNC's Notice of Filing, maintaining that the filing should have been in motion form because it addressed substantive issues. Plaintiff also moved this court to set aside the Magistrate's January 21, 2000 Order.

This court sustained plaintiff's objections to the Magistrate's January 21, 2000 Order, vacated that order and again remanded the matter to the Magistrate. Memo-

---

**3.** These documents appear to be excerpts from a DNC Donor File and bear Bates Nos. DNC 4303326, DNC 4303306, and DNC 4309631. Each of these documents is marked "Confidential Information."

**4.** DNC remonstrates this court for reading out of context its statement that it did not "propose to burden this Court with the issue of the propriety of Judicial Watch's remarkable access to and command of these voluminous productions, notwithstanding Congressional confidentiality protocols." Non–Party DNC's Reply in Support of Motion for Leave to File Surreply to Judicial Watch's Motion for Reversal of the Magistrate Judge's March 30, 1999 Memorandum Opinion and Order, at 3. The court wishes to point out, however, that it was not alone in accepting the DNC's words at face value, as apparently the Magistrate Judge also relied on the DNC's assertion when he concluded that even though DNC did not propose to burden the court with that issue, he had an independent obligation to pursue the matter. *See* Memorandum Order, January 21, 2000. Now, DNC insists that despite its language stating that it did not wish to place the issue of the *propriety* of Judicial Watch's access to these documents before the court, it did intend to place *the fact of Judicial Watch's access* before the court. But the court finds that the DNC's efforts to distinguish between the fact of Judicial Watch's access and the propriety of access is specious. Moreover, the court finds that burdening the court with yet another collateral issue is precisely what DNC intended to do by raising the matter at all.

randum and Order, at 8–9. In addition, the court granted plaintiff's motion to strike the DNC's January 13, 2000 Notice of Filing. The court also denied as moot and struck from the record DNC's Motion for Leave to Produce Subpoena and [Congressional Confidentiality] Protocols. Order, April 27, 2000. DNC now asks the court to reconsider these rulings.

## II. DISCUSSION

■ Five years since it began, this case continues to be sidetracked by collateral disputes, as evidenced by the matter underlying the present motion. Put most simply, the court has had enough. With its December 22, 1999 order, the court had hoped to steer the case back on track for purposes of completing discovery and resolving the case on the merits in a timely fashion, despite the apparent desire and best efforts of both sides to design ways of drawing this case out until the next millennium. Similarly, in reversing the Magistrate's January 21, 2000 order, wherein the court understood the Magistrate to be embarking on an investigation into the facts concerning Judicial Watch's access to certain purportedly confidential congressional documents, the court was attempting to minimize even further delay in this case due to what the court perceived to be an unwarranted foray into a collateral issue—whether Judicial Watch improperly obtained certain DNC documents in contravention of Congressional confidentiality protocols.

■ The issue that remains outstanding, and which was originally remanded to the Magistrate in December 1999, is whether further searches of DNC files are appropriate in light of the fact that plaintiff has demonstrated that additional documents exist in DNC files, which would have been responsive to the original, broad subpoena, were not captured by the subpoena as it was subsequently narrowed and modified by the court. Simply put, the existence of these documents raises a legitimate question as to whether the scope of the previous, modified subpoena was, in fact, too circumspect.

Of course, the court agrees with the DNC that the fact that Judicial Watch already has copies of these particular documents does foreclose plaintiff from demonstrating the requisite need for the very same documents. Moreover, the Birkenstock declaration, which the court now grants the DNC leave to file, indicates that a further search of the particular DNC files which contained these documents, the former files of Messrs. Mercer and Carroll, would not likely produce any other documents than the ones plaintiff already has obtained. *See* Declaration of Joseph M. Birkenstock, May 12, 2000, ¶¶ 4–7.

Nevertheless, even though plaintiff may be foreclosed from requesting a search of Messrs. Mercer's or Carroll's files, it does not necessarily follow that plaintiff should be foreclosed from any further searches of DNC files whatsoever. Indeed, Judicial Watch represents to the court that it only has a "handful" (approximately five) of the documents that were included in the DNC's production to Congress. *See* Plaintiff's Opposition to the Democratic National Committee's Motion for Reconsideration of the Court's April 27, 2000 Orders, at 16–17. Assuming that this representation is truthful, then the question still remains whether a subsequent DNC search of other individuals' files not previously searched is reasonably likely to uncover relevant, admissible documents. While the court appreciates DNC's position as a non-party and the obvious burden involved in responding to further document requests, DNC can hardly be considered a peripheral player in the overall factual allegations underlying this case. Nor is this an instance where a discovery request to a non-party seeks documents that would be ultimately irrelevant to the underlying case. *See, e.g., Food Lion, Inc. v. United Food and Commercial Workers International Union, AFL–CIO–CLC,* 103 F.3d 1007, 1009 (D.C.Cir.1997).

In light of these considerations, the court denies the DNC's motion for reconsideration of the April 27, 2000 order. However, because the court concludes that the Joseph Birkenstock declaration proffered by the DNC does provide at least some information relevant to the questions highlighted by this court in its December 22, 1999 opinion concerning whose files at the DNC the responsive documents came from and why these documents were not uncovered in the modified search ordered by the court, the court will now grant DNC's Motion for Leave to File Declaration of Joseph M. Birkenstock. *See* Declaration of Joseph M. Birkenstock, May 12, 2000, ¶¶ 4–7. With respect to the issue of further DNC searches, the court remands this matter to the Magistrate for his consideration of whether the reasonable likelihood that searches of DNC files not previously searched would uncover admissible relevant evidence would outweigh the burden on the DNC of conducting such further searches. In considering this matter, and to focus any further search, the Magistrate may wish to obtain specific information as to how DNC files are organized, whose files would be appropriate to include in a future search and what the specific parameters of any future search might be. To ascertain this information, the Magistrate may wish to allow a Rule 30(b)(6) deposition of the DNC's custodian of records.

## III. CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that DNC's Motion for Reconsideration is DENIED; and it is further

ORDERED that DNC's Motion for Leave to File Declaration of Joseph M. Birkenstock is GRANTED and the Clerk shall file such declaration on the record forthwith; and it is further

ORDERED that the matter of whether further searches of DNC files are appropriate is REMANDED to the Magistrate; and it is further

ORDERED that plaintiff's motion for sanctions and costs is DENIED.

SO ORDERED.